NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0243n.06

Nos. 25-1502/25-1503

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 28, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE WESTERN DISTRICT OF |
| KESHONN DAVID STEVENSON, | ) | MICHIGAN |
| Defendant-Appellant. | ) | |
|  | ) | OPINION |

Before: COLE, STRANCH, and BUSH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** This sentencing appeal concerns what factors a district court may consider when sentencing an offender for violating the terms of his supervised release. Keshonn David Stevenson was sentenced for violating the terms of his supervised release when he was declared absent without leave after failing to return to his halfway house following a hospital visit. He contends on appeal that the district court plainly erred by considering retributive purposes when it imposed his revocation sentence. Finding no plain error, we **AFFIRM**.

## I. BACKGROUND

This case concerns Stevenson's violation of the terms of two supervised release sentences, which he was serving concurrently, that were imposed in two separate district court cases. In the first case, the "Firearm Proceeding," Stevenson was sentenced on December 30, 2020, to 18 months of imprisonment followed by three years of supervised release after he pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Following his release from prison, Stevenson's supervised release was revoked on January 17, 2023, when he was found

to have violated several conditions. He was then sentenced to 10 months of imprisonment followed by two years of supervised released, with a special condition requiring him to reside at a halfway house for six months. Stevenson arrived at the halfway house on June 28, 2023.

On July 23, 2023, around 2:00 a.m., Stevenson walked out of the halfway house. A staff member observed Stevenson leaving and called him to ask whether he had officially gone absent without leave or if he intended to return, and Stevenson replied, "no f*** this place." He was captured by federal and state authorities on September 22, 2023, thus beginning the second case, the "Escape Proceeding," in which he was charged with escape from custody in violation of 18 U.S.C. § 751(a). Stevenson pleaded guilty and was sentenced to 12 months and one day of imprisonment followed by three years of supervised release.

On October 3, 2024, following his completion of the revocation sentence from the Firearm Proceeding and the sentence from the Escape Proceeding, Stevenson was placed back at the halfway house to begin serving his concurrent terms of supervised release. In the early morning of January 1, 2025,[1] Stevenson was transported to a hospital after reporting severe chest pain and lower back aches. He was discharged at 3:59 a.m. and, shortly thereafter, called the halfway house stating he would get a ride back to the facility. Stevenson did not return, however, and was declared absent without leave at 7:11 a.m. His whereabouts were unknown until he was arrested by state police on February 16, 2025. The Government filed petitions in both the Firearm Proceeding and the Escape Proceeding alleging several violations of the terms of Stevenson's supervised release, including the January 1 absconding incidents and two state law drug offenses.

---

[1] The date "January 1, 2024" appears on the revocation petitions in both cases. It is clear from the surrounding context and the record, however, that the correct date is January 1, 2025.

The district court held a hearing on these petitions on May 23, 2025. The court found that a preponderance of the evidence supported each alleged violation and that the most serious was a Grade A violation. When combined with Stevenson's criminal history category of III, this led to Guidelines ranges of 18-24 months for the violations in each separate case. Before pronouncing Stevenson's sentences, the district court explained,

> [T]he bottom line from my perspective is that supervision for Mr. Stevenson has been a complete failure. It has not worked in any way that we would have hoped for. Maybe not in any way that Mr. Stevenson hoped for either.
>
> It's led to a whole array of violations, to one revocation earlier on the 2020 case, and now what we are facing here. And it seems, if anything, that the situation is deteriorating just given the speed and unwillingness to abide by the fundamental basics of supervision, which is being where you are supposed to be. If you can't be where you are supposed to be for whatever reason, and can't keep up with the probation officer, there is no way the basic mission of supervision can be accomplished. And so I think, No. 1, supervision has been a failure from the start, and there is no point in further supervision in my view. I think the officer's recommendation to end supervision is correct, because I don't think Mr. Stevenson is ready to take advantage of it, and I don't think that we are in a position to provide anything further than what we've already done.
>
> That leaves then the punitive sanction. What do we do about this? And I do think revocation is essential under the circumstances, and then the question is, you know, how much is enough?

R. 50, Violation Hr'g Tr., PageID 274–75.[2] The district court, stating that "a significant sentence is appropriate and earned," then pronounced sentences of 18 months of imprisonment for the violations in each case, to run consecutively for a total of 36 months. R. 50, PageID 275.

The district court explained that these sentences reflected "a fair balance of the overall punitive goals of the Court, the overall recognition that I need to keep other people on supervision aware of the high cost of failure, and I hope to give Mr. Stevenson himself a chance to reassess and think about what he wants to do with his life." R. 50, PageID 275–76. Finally, the court

---

[2] This and subsequent citations to the violation hearing transcript are to the copy that appears on the Escape Proceeding docket, No. 1:23-cr-126.

reflected on Stevenson's history and warned of the potential consequences should he continue on his current path: "It's been exactly a continuation, maybe even an acceleration of trouble. And the pattern for that is if not life on the installment plan, you know, it's death in the street. That's the other way that those cases end, and nobody wants that for Mr. Stevenson." R. 50, PageID 276. Stevenson did not object to these sentences. In the time between Stevenson's revocation sentencing and this appeal, the Supreme Court decided *Esteras v. United States*, which held that district courts may not impose sentences for supervised release violations based on a desire to punish the offender for his underlying criminal offense. 606 U.S. 185, 188 (2025).

## II.   ANALYSIS

"Procedural reasonableness requires the district court to properly calculate the Guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Morris*, 71 F.4th 475, 481 (6th Cir. 2023) (citation modified). When a court sentences a defendant to supervised release, it may not consider § 3553(a)(2)(A), which is "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3583(c). It may consider the other § 3553(a) factors, including "the need for the sentence imposed . . . (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *Id.* In *Esteras*, the Supreme Court held that the statutory prohibition on consideration of § 3553(a)(2)(A) applies to revocations of supervised release in addition to initial

sentences of supervised release, vacating a Sixth Circuit decision that held otherwise. 606 U.S. at 195; *United States v. Esteras*, 88 F.4th 1163 (6th Cir. 2023).[3]

*Esteras* clarified that "the offense" in § 3553(a)(2)(A) refers to the underlying criminal conviction, not the conduct that violates the conditions of supervised release, meaning that § 3553(a)(2)(A) may not be applied in revocations of supervised release. *See* 606 U.S. at 194 n.5. The Supreme Court declined to decide whether sentencing courts may consider "retribution *for the violation of the conditions of the supervised release*." *Id.* We have held, though, that "district courts may consider the seriousness of the violation conduct when determining the sanction for the breach of trust associated with a supervised-release violation." *Morris*, 71 F.4th at 482; *see United States v. Patterson*, 158 F.4th 700, 702–03 (6th Cir. 2025); *United States v. Johnson*, 640 F.3d 195, 203–04 (6th Cir. 2011).

Stevenson contends the district court improperly considered retribution under § 3553(a)(2)(A) when it sentenced him to consecutive 18-month terms of imprisonment for his supervised release violations. Because he did not object when the district court imposed his revocation sentences, we review for plain error, which requires "(1) an error, (2) that was obvious or clear, (3) that affected his substantial rights, and (4) that affected the fairness, integrity, or public reputation of his judicial proceedings." *United States v. Wala*, 166 F.4th 583, 593–94 (6th Cir. 2026) (citation modified). The Supreme Court has clarified that, when evaluating the second prong of plain error review "where the law at the time of trial was settled and clearly contrary to the law

---

[3] Stevenson states that this change in the relevant law accounted for his failure to object below. At the time of his revocation sentencing, Sixth Circuit precedent allowed district courts to consider § 3553(a)(2)(A) when imposing revocation sentences. *See Esteras*, 88 F.4th at 1167, *vacated*, *Esteras*, 606 U.S. at 195.

at the time of appeal," "it is enough that an error be 'plain' at the time of appellate consideration." *Johnson v. United States*, 520 U.S. 461, 468 (1997).

Stevenson points to the district court's reference to "the punitive sanction," R. 50, PageID 275, as evidence that it improperly considered "§ 3553(a)(2)(A)'s retributive focus," *Esteras*, 606 U.S. at 200. It is true that the word "punitive," as used here in the district court's references to "the punitive sanction" or "the overall punitive goals of the court," R. 50, PageID 275–76, can imply a retributive focus consistent with § 3553(a)(2)(A). Such language cannot satisfy the plain error standard on this record, however, for two reasons. First, the surrounding context suggests that the district court was focused on rehabilitation under § 3553(a)(2)(D), as reflected in statements like "[supervision] has not worked in any way that we would have hoped for"; "the officer's recommendation to end supervision is correct, because I don't think Mr. Stevenson is ready to take advantage of it"; and "I hope to give Mr. Stevenson himself a chance to reassess and think about what he wants to do with his life." R. 50, PageID 274–76. Second, although the district court does discuss Stevenson's history on supervised release, there is nothing in the hearing transcript to suggest the court was imposing a "punitive sanction" for the specific purpose of punishing him for his underlying offenses in either the Firearm Proceeding or the Escape Proceeding. *See id.* As the Supreme Court instructed in *Esteras*, a revocation judgment must be affirmed on plain error review "unless it is clear or obvious that the district court actually relied on § 3553(a)(2)(A)—because it did so either expressly or by unmistakable implication." 606 U.S. at 202–03 (citation modified). This record does not indicate "expressly or by unmistakable implication," *id.*, that the district court sought to punish Stevenson for his original offenses when it imposed his revocation sentences. *See Patterson*, 158 F.4th at 702–03.

More importantly, the record suggests the district court considered Stevenson's violation conduct as a breach of trust, which we have held is permissible: "it seems, if anything, that the situation is deteriorating just given the speed and unwillingness to abide by the fundamental basics of supervision, which is being where you are supposed to be," R. 50, PageID 274; *see Morris*, 71 F.4th at 482. The district court immediately connected this observation, furthermore, to rehabilitative purposes that are permissible under § 3553(a)(2)(D), explaining to Stevenson that, "[i]f you can't be where you are supposed to be for whatever reason, and can't keep up with the probation officer, there is no way the basic mission of supervision can be accomplished." R. 50, PageID 274–75. On this record, Stevenson cannot satisfy plain error review. We therefore hold that his revocation sentences were procedurally reasonable.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM**.